OPINION
{¶ 1} These appeals were brought by relator/plaintiff-appellant, Champaign County Nursing Home ("appellant"), from judgments of the Franklin County Court of Common Pleas. In 1997, appellant filed an action in the Franklin County Court of Common Pleas seeking a writ of mandamus, declaratory judgment, injunctive relief, and other relief based on alleged violations of federal and state Medicaid law, violations of federal and state constitutional provisions, and breach of contract. In February 1998, the trial court granted summary judgment in favor of respondent/defendant-appellee, Arnold R. Tompkins, Director of the Ohio Department of Human Services ("ODHS"). Appellant appealed, and we remanded the matter to the trial court to resolve an inconsistency in the decision. In January 2000, the trial court issued a supplemental decision correcting a clerical error and again awarded judgment in favor of ODHS.
 {¶ 2} Appellant again appealed. The two appeals were consolidated and additional briefs filed. However, in March 2000, appellant filed another motion in the trial court seeking relief from judgment under Civ.R. 60(B). Appellant asked this court to remand the matter again in order to permit the trial court to rule on the motion. We granted the request, and the trial court denied the motion in June 2000. We then granted leave to amend the notice of appeal and file supplemental assignments of error and briefs. The amended, consolidated appeals are now before this court.
 {¶ 3} Appellant is operated by Champaign County and is certified under Medicaid law as a nursing facility and as an intermediate care facility for the mentally retarded ("IC facility"). Under the Medicaid program, facilities across the country are not paid a standard rate for all residents, but each facility is reimbursed on the basis of its costs in providing services, and other factors. See Drake Ctr., Inc. v. Ohio Dept. of Human Serv. (1998), 125 Ohio App.3d 678. Based on federal and state law, and pursuant to provider agreements, ODHS reimburses appellant based on a per diem rate per resident. Section 1396, Title 42, U.S. Code; R.C. 5111.20, et seq.
 {¶ 4} During the period of time at issue, the Medicaid payment process in Ohio was a multi-stage process for each year of services provided. After the facility submitted its cost report for the year, the process involved a desk review, rate-setting, interim settlement (at which time ODHS paid the facility), and final settlement (at which time ODHS reached a final decision on disputed matters, determined whether the facility had been overpaid or underpaid, and made a final payment or a recoupment demand). See Am.S.B. No. 206; Am.Sub.H.B. No. 298; Sub.S.B. No. 359; affidavits of D. Wilkins and B. Cummins; deposition transcript of D. Wilkins; R.C. 5111.20 — 5111.31; Ohio Adm. Code 5101:3-3. If the facility chose to challenge ODHS's proposed final settlement, it could request an administrative hearing under R.C. Chapter 119.06. Following the administrative remedies within the agency, facilities could then appeal to the common pleas court under R.C. 119.12.
 {¶ 5} The present dispute focuses on ODHS's setting of the per diem rate for services provided by appellant from July 1, 1991 through June 30, 1992 ("fiscal year 1992"). In addition, appellant raises issues regarding ODHS's rates for services rendered from July 1, 1992 through June 30, 1993 ("fiscal year 1993").
 {¶ 6} The pertinent events occurred against a backdrop of legislation in which the General Assembly modified the Medicaid payment system, changing from a retrospective-rate system to a prospective-rate system for nursing and IC facilities. Under the retrospective-rate system, the facility filed a cost report after each calendar year, and ODHS would make payment based on that year's costs and other factors. The new legislation created a prospective-rate system under which costs incurred during a given period were combined with factors such as inflation to determine a subsequent period's per diem rate. See Am.S.B. No. 206 (effective June 29, 1991); Am.Sub.H.B. No. 298 (effective July 26, 1991) and Sub.S.B. No. 359 (effective Dec. 22, 1992).
 {¶ 7} As part of these amendments to state Medicaid law, the General Assembly established a transitional or interim system for the period from July 1, 1991, through June 30, 1993 — fiscal years 1992 and 1993. For example, the legislature provided that ODHS would determine the prospective per diem rates for services provided during fiscal year 1992 based on the cost report for calendar year 1990. Am.S.B. No. 206, Section 36(A)(1). For services provided during fiscal year 1993, prospective rates would be determined from the cost report from July 1 through December 31, 1991. Id. at 36(A)(2).
 {¶ 8} Further, in Am.Sub.H.B. No. 298, the General Assembly added a subsection providing that, for services rendered in fiscal year 1992, ODHS could adjust the prospective rate based on renovation costs reported by the facility, if the renovation met three criteria. See Section 23(A)(1)(g) (amending Section 36 of Am.S.B. No. 206). These criteria were placed in former Ohio Adm. Code 5101:3-3-17, which recited the formula and criteria announced in the statute. In addition, the legislature established the source of funds from which ODHS would pay the adjustments under Section 23(A)(1)(g), and it also limited the spending for these adjustments. Sub.S.B. No. 359, Section 8 (amending Section 36 of Am.S.B. No. 206).
 {¶ 9} In 1991, appellant completed and filed its cost report for calendar year 1990. Under the former retrospective system, the 1990 cost report would be used for reimbursements for calendar year 1990. In addition, under the new transitional system, the 1990 cost report would be used to determine the per diem rate for fiscal year 1992. Accordingly, after appellant filed a 1990 cost report for the nursing and IC facilities, the administrative process began during which ODHS would set rates for fiscal year 1992, pay an interim settlement for that year, and eventually determine a final settlement for that year.
 {¶ 10} By November 1993, ODHS had completed its calculation of the rates for fiscal year 1992, including the adjustments under Section 23(A)(1)(g) for renovation costs. ODHS published a list in November 1993 showing the adjustments and rates for Ohio facilities for fiscal year 1992. Then, in February 1994, in connection with making the interim settlements, ODHS completed distribution of the limited funds available under Section 23(A)(1)(g), according to the testimony of Daniel Wilkins, an agency administrator.
 {¶ 11} At some point in 1994, appellant became aware that it had made significant errors in its cost report for calendar year 1990. It had failed to include renovation-related bond interest and depreciation. Appellant sought to amend its 1990 cost report to add these costs. Appellant not only wanted ODHS to use the new figures for the final settlement for calendar year 1990 under the former system, but also sought to have ODHS use the new 1990 figures for the purpose of qualifying for an adjustment under Section 23(A)(1)(g) pursuant to the new legislation. Appellant eventually filed an amended 1990 cost report.
 {¶ 12} According to appellant, ODHS used the revised figures in the amended 1990 report for the final settlement for 1990 but refused to use the new figures to award an adjustment for fiscal year 1992 under Section 23(A)(1)(g) because the reimbursement for calendar year 1990 was governed by laws different from those applicable to fiscal year 1992. ODHS took the position that appellant's amended report for 1990 was not filed in time to allow ODHS to make a payment under Section 23(A)(1)(g), due to funding limitations in the legislation.
 {¶ 13} In September 1995, ODHS issued "proposed adjudication" orders for the nursing facility and IC facility for fiscal year 1992, proposing a final settlement for each facility. In response, appellant requested the administrative hearing provided under R.C. Chapter 119.
 {¶ 14} Before the administrative hearing was held, ODHS decided to withdraw its proposed orders, apparently because it wanted to resolve appellant's final payments for prior years before proposing a final settlement as to fiscal year 1992. Therefore, on April 5, 1996, ODHS sent a letter to appellant withdrawing the proposed settlement issued in September 1995. However, the caption of the letter listed only one of the two provider numbers for appellant. Therefore, although ODHS had intended to withdraw the proposal for both facilities, the letter affected a withdrawal only of the proposal for the nursing facility; it did not withdraw the proposed adjudication for the IC facility for fiscal year 1992.
 {¶ 15} Subsequently, in the absence of an objection to this proposed adjudication order for the IC facility, ODHS issued in September 1996 a "final adjudication" order for the IC facility for fiscal year 1992. The order includes a statement regarding the facility's right to file an appeal to the common pleas court under R.C. Chapter 119 and5111.06.
 {¶ 16} Appellant filed the statutory appeal from the final order for the IC facility. The appeal, case No. 96CV-7546, was assigned to Judge Deborah O'Neill. However, this appeal also purported to include the proposal for the nursing facility, which ODHS had explicitly withdrawn.
 {¶ 17} In November 1996, ODHS moved to dismiss the appeal, asking Judge O'Neill to remand the matter to the agency on the grounds that, first, the proposed adjudication order regarding the nursing facility was not a final order in the first place and, in any event, it had been withdrawn. Second, ODHS stated that, although it had issued a final adjudication order regarding the IC facility, that final administrative order was issued by mistake. ODHS stated that the error would be corrected but for the filing of the current appeal under R.C. Chapter 119.
 {¶ 18} By order of March 12, 1997, Judge O'Neill dismissed the part of the appeal concerning the nursing facility because no final order had been issued by ODHS. However, the court did not dismiss the appeal with respect to the IC facility. Judge O'Neill referred the IC issues to a magistrate.
 {¶ 19} Therefore, as of March 1997, the appeal under R.C. Chapter 119 remained pending before the common pleas court in case No. 96CV-7546 with respect to the final administrative order for the IC facility for fiscal year 1992. With respect to the nursing facility, the agency was still considering a proposed settlement for 1992.
 {¶ 20} Nonetheless, on March 25, 1997, appellant filed a new and separate action in the Franklin County Common Pleas Court against ODHS. This action, case No. 97CV-3949, was not characterized as an administrative appeal under R.C. 119.12 but was styled as an original action seeking a writ of mandamus, declaratory judgment, injunctive relief, and a remedy for breach of contract in regard to both fiscal years 1992 and 1993. The case was assigned to Judge David Cain.
 {¶ 21} In this second action before Judge Cain, ODHS filed a motion to dismiss and/or for summary judgment. One of the grounds was that ODHS had not yet issued a final order with respect to the nursing facility, and that the final order with respect to the IC facility was pending on appeal before Judge O'Neill under R.C. Chapter 119. Further, ODHS explained that it had intended to withdraw both of the proposed orders but had withdrawn only one of them due to a clerical error. ODHS provided documents in support of its argument that there was, as yet, no final administrative order with respect to either facility for 1992. ODHS argued, inter alia, that the action should be dismissed because appellant had an adequate remedy at law and had not exhausted its administrative remedies.
 {¶ 22} In case No. 96CV-7546, the appeal before Judge O'Neill, the magistrate issued a decision in December 1997. The magistrate recommended the court vacate the final administrative order issued by ODHS for the IC facility for fiscal year 1992 and remand the matter to ODHS for further administrative proceedings. On February 4, 1998, Judge O'Neill adopted the magistrate's decision, and, by entry filed February 24, 1998, vacated ODHS's final administrative order with respect to the IC facility for fiscal year 1992.
 {¶ 23} The record shows no appeal from Judge O'Neill's judgment in case No. 96CV-7546. Accordingly, the matter was remanded to ODHS for further administrative procedures and issuance of a final administrative order.
 {¶ 24} In the meantime, the action before Judge Cain, sounding in mandamus, declaratory judgment, etc., was proceeding. Appellant filed an amended complaint and, eventually, both parties filed motions for summary judgment with accompanying evidence. On February 18, 1998, Judge Cain issued a decision in case No. 97CV-3949, granting summary judgment in favor of ODHS and denying appellant's motion for summary judgment.
 {¶ 25} In its decision, after addressing the relative rights and duties of the parties under statutory and constitutional law, the trial court concluded that a writ of mandamus could not be granted compelling ODHS to pay the requested amounts under Section 23(A)(1)(g) because the evidence established no failure of duty by ODHS. The trial court also addressed appellant's equitable arguments and again found that the circumstances did not provide a basis for compelling ODHS to pay the requested amounts. The court rejected arguments that preclusion doctrines controlled ODHS's consideration of the settlement amounts for 1992 and 1993, and the court found no breach of contract nor any violation of Medicaid law, state or federal. Further, the court found no violation of constitutional principles by ODHS. In sum, the trial court found no basis for issuing a writ or any basis for granting declaratory judgment or other relief requested in the complaint. The trial court also denied appellant's motion to strike Wilkins' affidavit.
 {¶ 26} On March 2, 1998, ODHS filed a motion to correct a clerical error in the decision, a sentence stating that there "were material issues of fact." However, the judgment was journalized on March 3, 1998, and appellant filed a notice of appeal before any ruling on the motion to correct the textual inconsistency in the decision.
 {¶ 27} In September 1998, this court remanded the matter for the trial court to address the inconsistent language in the decision. While the matter was on remand, appellant filed a motion to vacate the March 1998 judgment. On January 12, 2000, the trial court filed a decision and entry correcting the clerical error in the February 1998 decision, again awarding summary judgment in favor of ODHS and denying the motion to vacate.
 {¶ 28} Appellant again appealed, and this second appeal was consolidated with the 1998 appeal from the trial court's decision. However, appellant then filed a new motion in the trial court, a motion for relief from judgment under Civ.R. 60(B). Appellant asked this court to remand the matter to the trial court for a ruling on that motion. We granted the remand, and, in June 2000, the trial court denied appellant's motion.
 {¶ 29} Returning to the court of appeals, appellant then sought to amend its notice of appeal and to file supplemental assignments of error. We granted leave, and both parties filed additional briefs. Appellant stated seven assignments of error in regard to summary judgment in case No. 97CV-3949 and two assignments of error in regard to denial of relief under Civ.R. 60(B). In opposition, ODHS contended the court should uphold the summary judgment in favor of ODHS.
 {¶ 30} In reviewing the record, however, we have determined that appellate review of the issues raised by appellant would not be appropriate at this time. We conclude that the claims in case No. 97CV-3949 were not properly before the common pleas court. Rather than granting summary judgment on the merits, the common pleas court should have granted judgment in favor of ODHS based on the procedural posture of the case, which made mandamus relief and declaratory judgment inappropriate, as explained more fully below.
 {¶ 31} According to the record, ODHS has not yet issued a final administrative order for fiscal year 1992 or 1993 with regard to either of the facilities. In regard to fiscal year 1992, the record shows that ODHS issued a proposed adjudication for 1992 for the nursing facility but withdrew it. ODHS issued a final 1992 order for the IC facility, but Judge O'Neill vacated it and remanded the matter to ODHS. The record shows no appeal of Judge O'Neill's judgment. Therefore, as of February 24, 1998 — the date of Judge O'Neill's judgment entry — there was no final administrative order for either facility for fiscal year 1992.
 {¶ 32} As to fiscal year 1993, the record does not show that ODHS ever issued any proposed orders. On the contrary, in regard to fiscal year 1993, Dale Long, administrator for appellant, averred only that appellant "believes" ODHS "will" refuse to reimburse certain costs "in the fiscal year 1993 final settlement." Further, appellant acknowledges in its brief that ODHS has not "set the final rate for fiscal year 1993."
 {¶ 33} Appellant suggests wrongdoing or at least dilatory conduct by ODHS in failing to issue a final settlement for fiscal year 1993, and it argues that this failure to issue an order is grounds for extraordinary relief. We disagree. Given the interruption of the administrative process with protracted litigation, the delay in completing the administrative proceedings is not surprising. This delay is due largely to an unwillingness to allow the administrative proceedings to reach their termination unimpeded and to seek redress in the ordinary course of law for any legal error in the final ODHS orders.
 {¶ 34} Applying the procedural facts to the law, we conclude that ODHS was entitled to judgment as a matter of law based on the posture of the issues, and we find that the trial court erred in addressing appellant's claims on their merits. First, the law is well-established that a prerequisite for extraordinary relief in mandamus is that the party must allege and prove that it has no adequate remedy at law. E.g., State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. Here, appellant had further remedies within the agency. In addition, following the issuance of a final administrative order, it had the remedy of an administrative appeal to the common pleas court under R.C. 119.12. Indeed, at the time appellant filed its mandamus action in the common pleas court, it already had an appeal pending before Judge O'Neill. If that appeal appeared fruitless because it was premature, the appropriate course for appellant was not to seek relief in mandamus or declaratory judgment but to assist in resuming the administrative proceedings as expeditiously as possible to hasten judicial review under R.C. Chapter 119. In short, the request for mandamus relief should have been denied based on appellant's failure to establish that there was no adequate remedy at law.
 {¶ 35} Second, the claims sounding in contract essentially sought a determination that ODHS was in breach of contract for failing to pay certain amounts for services rendered. However, ODHS had not yet made its final payment, and the contract claims were thus premature. Moreover, to the extent that appellant was seeking a monetary judgment against the state, the common pleas court lacked jurisdiction over that claim. The Court of Claims has exclusive original jurisdiction over contract actions for money damages against the state. See R.C. 2743.03.
 {¶ 36} Third, appellant sought a declaration of its rights regarding Medicaid reimbursement and injunctive relief consistent with those rights. However, these issues were not properly before the common pleas court for declaratory judgment under R.C. Chapter 2721.
 {¶ 37} We recognize that, in Ohio, a remedy in declaratory judgment is in addition to other legal and equitable remedies, to be granted where speedy relief is necessary to preserve rights that might otherwise be impaired. Herrick v. Kosydar (1975), 44 Ohio St.2d 128; Arbor Health Care Co. v. Jackson (1987), 39 Ohio App.3d 183, 186. Where other remedies exist, a common pleas court may nonetheless find in the sound exercise of its discretion that an action for declaratory judgment is a reasonable alternative to other remedies. Herrick, supra. For example, in Herrick, declaratory judgment was a reasonable alternative because appellant's sole issue was a constitutional question that the administrative agency could not determine in its hearings, and the action in common pleas court was a class action for thousands of people, making declaratory judgment a more efficient method of proceeding.
 {¶ 38} In other cases, however, declaratory relief is inappropriate where other remedies are available. In Arbor Health, supra, the plaintiff was a nursing facility seeking declaratory relief against a state agency with respect to a certificate of need, and the agency argued that plaintiff had an adequate remedy in the administrative proceedings with an eventual appeal, if necessary, to the common pleas court. This court observed, first, that where the statutory system provides a specialized procedure for an administrative remedy, declaratory relief is usually inappropriate. Citing numerous precedents, we recognized the following proposition of law: "Where, however, a specialized statutory remedy is available in the form of an adjudicatory hearing, a suit seeking a declaration of rights which would bypass, rather than supplement, the legislative scheme ordinarily should not be allowed." Id. at 186.
 {¶ 39} Second, we emphasized in Arbor Health that, merely because the administrative remedy takes more time than plaintiff desires, is not a sufficient reason to bypass the statutory procedures for review. Third, we observed that the presence of a constitutional claim did not mean that declaratory relief was appropriate. Where the plaintiff may prevail on the statutory claims and thus render the constitutional claims moot, we concluded that the administrative remedy should be pursued first. Id. We stated the following rationale:
 {¶ 40} "Plaintiff in the instant suit seeks a declaration of its constitutional right in addition to a declaration of its statutory rights under the administrative procedure. We believe that, should plaintiff prevail in its administrative appeal, plaintiff's constitutional claim will become moot. As such, Lieux [v. Westlake (1951), 154 Ohio St. 412] is controlling.
 {¶ 41} "The court in Lieux stated that constitutional questions will not be decided until it becomes necessary to do so. Thus, where an administrative procedure might provide the relief sought without deciding a constitutional issue, the administrative remedy should be pursued first. * * *" Id.
 {¶ 42} Based on consideration of all the above-listed factors, we concluded in Arbor Health that "the circumstances of this action dictate that declaratory relief was inappropriate." Id. Subsequently, in Fairview General Hosp. v. Fletcher (1992), 63 Ohio St.3d 146 (in which the Ohio Supreme Court adopted our decision, quoting it in full), we reaffirmed the rationale in Arbor Health as follows:
 {¶ 43} "The plaintiff [in Arbor Health] appealed to this court, and we held that, despite the presence of a constitutional claim, it was preferable for plaintiff to have exhausted its administrative remedies prior to seeking declaratory relief in the common pleas court in order to avoid unnecessarily deciding the constitutional issue." Id. at 149.
 {¶ 44} Based on our Arbor Health rationale, we conclude in the present case that appellant should have exhausted its administrative hearings and its statutory appeal, if necessary, before seeking a declaratory judgment in the common pleas court.
 {¶ 45} Although appellant relies on Buckeye Quality Care Centers, Inc. v. Fletcher (1988), 48 Ohio App.3d 150, the situation in that case was materially different from the circumstances in the present action. In Buckeye Quality, we merely found that the trial court's dismissal under Civ.R. 12(B)(6) was improper because some allegations in the complaint, though sketchy, met the plaintiff's "initial burden" under that rule. The plaintiff alleged that it was continuing to comply with defective rules for fear of losing its Medicaid certification and that it could not disobey the invalid rules without suffering overwhelming, irremediable harm. We acknowledged that, in certain cases such as Herrick, a party need not exhaust administrative remedies to seek declaratory relief, and we found that the situation in Buckeye Quality involved circumstances where, "[i]f plaintiffs continue indefinitely to comply with the rules, then they may be forever foreclosed forever from challenging the rules' adoption." Id. at 154. In contrast, in the present appeal, appellant was not faced with a situation where it might be foreclosed forever from challenging the laws at issue, nor was the trial court addressing a question of sufficiency of allegations under Civ.R. 12(B)(6).
 {¶ 46} We conclude here, as in Arbor Health, based on all the factors for consideration that "the circumstances of this action dictate that declaratory relief was inappropriate." First, the administrative system for Medicaid reimbursement is highly specialized, and the statutes and rules governing reimbursement to nursing facilities and IC facilities are extremely complex. Appellant's action served to bypass, rather than supplement, the legislative scheme. See Arbor Health, supra, at 186. Second, we believe that a favorable decision on the statutory claims in an administrative hearing or an appeal under R.C. Chapter 119 may render the constitutional issues moot.
 {¶ 47} Third, it was important for appellant to exhaust administrative remedies before seeking declaratory relief for other reasons relating to the appropriate and efficient use of the courts. Cf. Herrick (observing that a declaratory action was an efficient method for resolving the particular claims at issue because the suit was a class action on behalf of numerous plaintiffs). Here, the record shows that, when appellant filed its action for declaratory judgment in case No. 97CV-3949, it already had an administrative appeal pending in the same court before a different judge. A myriad of problems arise if the courts permit a complaining party to file an administrative appeal and then pursue a declaratory judgment action contemporaneously in the same court, in circumstances such as those presented here. The duplicative actions obviously waste the resources of the court. Further, having two cases proceed simultaneously in the same court on the same issues (or many of the same issues) raises the possibility of conflicting rulings, creating significant potential for confusion or at least further litigation to determine which rulings are binding.
 {¶ 48} Also, if the courts permit parties to proceed in declaratory judgment after filing the statutory appeal, the procedure could encourage "judge shopping." Parties could file the statutory appeal and then file a declaratory action to see whether they get a different judge whom they view as more favorable. In addition, where parties can maintain an action in declaratory judgment after filing the statutory appeal, simply by virtue of pleading a constitutional claim regardless of its merit, parties would have an easy avenue for bypassing the statutory appeal almost at will. In this case, the action before Judge Cain was filed while the statutory appeal was pending before Judge O'Neill and while the administrative proceedings before ODHS were incomplete.
 {¶ 49} For these reasons, we conclude that the common pleas court properly granted summary judgment in favor of ODHS. However, the common pleas court should have granted judgment on grounds of the procedural posture, not on the lack of merit of appellant's claims. In addition, a fourth reason that remedies under R.C. Chapter 119 should have been completed before seeking declaratory relief is that appellant did not meet the fundamental requirement of demonstrating that declaratory relief was necessary to preserve rights that might otherwise be lost during participation in administrative hearings.
 {¶ 50} At issue was a final payment of the remaining balance due, not the entire payment for 1992. Under the statutory system, the state would make a substantial payment to facilities at the interim-settlement stage, and facilities could then litigate any alleged underpayment during the administrative process. Although a decision regarding the final balance could take several years, facilities received the bulk of their Medicaid reimbursements much earlier. According to appellant's evidence, the additional payment at stake for fiscal year 1992 was about $66,000 for the nursing facility and about $11,000 for the IC facility. For fiscal year 1993, the amounts were smaller, and appellant explained that it obtained additional funds from the county so that there was no emergency. If successful in the administrative or judicial proceedings under R.C. Chapter 119, appellant could then repay the extra funds it had received from the county. Thus, the lack of a final administrative order did not warrant filing an action that circumvented the administrative proceedings. The record before the trial court did not demonstrate that appellant's rights would be lost unless it bypassed the administrative remedies provided by statute.
 {¶ 51} Therefore, we conclude that the trial court erred in reaching the merits of appellant's claims. Under the circumstances, declaratory relief was not a reasonable alternative. Mandamus relief was not available due to the adequate remedies in the ordinary course of law. The contract claims were not only premature but potentially barred by the exclusive jurisdiction of the Court of Claims. While we recognize that appellant raised constitutional issues in the common pleas court, and that it is theoretically possible that not all the constitutional issues would be rendered moot by a decision on the statutory issues, we conclude that, to the extent that any residual issues of constitutional law would remain after the administrative remedies were exhausted, those issues would be ripe for judicial review at that time. Those issues were not ripe for review, however, when appellant filed its action in 1997.
 {¶ 52} We acknowledge that appellee, having prevailed in the trial court on the merits, did not assign as error that the trial court failed to state procedural and/or jurisdictional grounds in support of summary judgment. However, we find that the record presents plain error that required correction by this court in the interests of justice. Accordingly, construing the evidence in favor of appellant, we agree with the trial court that ODHS was entitled to summary judgment, although we rest this decision on different grounds. The legislature established remedies and procedures for challenging ODHS decisions regarding Medicaid reimbursement, and we find that this process should not be circumvented under circumstances such as those presented here. We, therefore, affirm the judgment in favor of ODHS but we substitute the reasoning herein for the rationale set forth in the trial court's decision below.
Judgments affirmed.
PETREE, P.J., and BRYANT, J., concur.